John Craiger (Bar No. 021731)
**POLSINELLI PC**
One East Washington St., Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jcraiger@polsinelli.com

Matthew S. Layfield (*Pro Hac Vice*)
Michael A. Campbell (*Pro Hac Vice*)
Nick A. Griebel
**POLSINELLI PC**
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
Email: mlayfield@polsinelli.com
       mcampbell@polsinelli.com
       ngriebel@polsinelli.com

*Attorneys for the Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SKYLER AARON COOK,<br><br>Debtor. | Chapter 7 Proceedings<br><br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>VALLIANCE BANK, SHELBY BRUHN, and KATHERINE S. BRUHN,<br><br>Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br>**DEFENDANTS' MOTION TO WITHDRAW REFERENCE AND MEMORANDUM OF SUPPORTING AUTHORITIES** |

Defendants in the above-captioned adversary proceeding, Valliance Bank ("**Valliance**"), Shelby Bruhn ("**Mr. Bruhn**"), and Katherine S. Bruhn ("**Mrs. Bruhn**," and

collectively with Valliance and Mr. Bruhn, "**Defendants**"), by and through undersigned counsel, hereby move (this "**Motion**"), pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Local Rule 5011-1, to withdraw the reference of this adversary proceeding from the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**") to the United States District Court for the District of Arizona (the "**District Court**").  In support of this Motion, Defendants respectfully state as follows:

## **OVERVIEW**

Withdrawal of the reference is warranted and appropriate in this case because the Plaintiff James E. Cross, as Chapter 7 Trustee for the bankruptcy estate of the above-captioned debtor (the "**Trustee**"), has asserted multiple non-core state law claims against Defendants.  The bankruptcy court lacks jurisdiction to enter any final orders or judgments with respect to these non-core state law claims, and the Defendants have not consented to any such adjudication.

Furthermore, all relevant factors weigh in favor of withdrawal of the reference.  These non-core state law claims overwhelmingly predominate over the core fraudulent transfer claims asserted.  The factual issues attendant to adjudication and resolution of the state law claims dwarf the factual issues attendant to the fraudulent transfer claims, and thus litigation and discovery of the non-core state law claims will subsume the core fraudulent transfer claims.  In addition, the damages alleged with respect to the non-core state law claims are significantly more than the damages alleged with respect to the core fraudulent transfer claims.  Defendants have also demanded, and are entitled to, a jury trial.  Accordingly,

considerations of judicial economy and costs favor withdrawal of the reference so that all claims can be finally adjudicated in a single forum.

## RELEVANT BACKGROUND

On February 19, 2020, the above-captioned debtor Skyler Aaron Cook (the "**Debtor**") filed a voluntary petition with the Bankruptcy Court commencing a case for relief under Chapter 11, Subchapter V of the Bankruptcy Code (the "**Bankruptcy Case**"). The Debtor was the only debtor in the Bankruptcy Case. The Defendants did not assert any claim, did not file any proofs of claim, and did not otherwise appear in the Bankruptcy Case or submit to the jurisdiction of the Bankruptcy Court.

On September 1, 2020, the Bankruptcy Court entered the Stipulated Order Directing Conversion of this Case to a Chapter 7 Proceeding Pursuant to 11 U.S.C. § 1112(b)(1) [Docket No. 137] (the "**Conversion Order**").

On December 31, 2021, the Trustee first filed his Adversary Complaint against Defendants Valliance and Mr. Bruhn [Docket No. 1] (the "**First Complaint**"). The First Complaint only alleged two (2) causes of action, one for aiding and abetting breach of fiduciary duty, and a second for negligence (collectively, the "**State Law Claims**").

On February 3, 2022, the Trustee filed his Amended Complaint, which added Mrs. Bruhn as a defendant [Docket No. 7] (the "**Second Complaint**"). The Second Complaint still only asserted the two State Law Claims against Defendants.

On March 4, 2022, Defendants filed their Motion to Dismiss Complaint [Docket No. 21], and accompanying Memorandum of Law [Docket No. 22], noting, among other things, that the Second Complaint should be dismissed because the Trustee completely failed to

assert any causes of action that would invoke core bankruptcy jurisdiction, that the Trustee lacked any standing to assert purely state-law causes of action against the Defendants, and the Trustee was barred from any recovery under the doctrine of *in pari delicto*.

On April 18, 2022, the Trustee filed his Motion for Leave to Amend Complaint [Docket No. 32]. Defendants extended the Trustee the professional courtesy of agreeing to allow him to file a third Complaint, and on May 11, 2022, he filed his Second Amended Complaint [Docket No. 39] (the "**Third Complaint**"). The Third Complaint still asserted the two State Law Claims, but the Trustee added claims for avoidance and recovery of alleged fraudulent transfers under: 11 U.S.C. § 548(a)(1)(A), 11 U.S.C. § 548(a)(1)(B), Tex. Bus. & C. Code § 24.005(a)(1), and Tex. Bus. & C. Code § 24.005(a)(2) (collectively, the "**Fraudulent Transfer Claims**").

On June 14, 2022, Defendants filed their Motion to Dismiss [Docket No. 44] and accompanying Memorandum of Law [Docket No. 45], asserting, among other things, that the Trustee's newly asserted Fraudulent Transfer Claims (Counts I, II, III, and IV) are time-barred and outside the statute of limitations, the Third Complaint fails to allege a "transfer of an interest of the debtor in property" as the Trustee alleges that the payments were received from various non-debtor entities of which the Debtor was only a 50% owner, and that the Debtor received reasonably equivalent value.

On November 23, 2022, Defendants timely filed their Demand for Jury Trial [Docket No. 76] (the "**Demand for Jury Trial**"). The Defendants have not consented to the Bankruptcy Court's jurisdiction or to its entry of final orders or judgments in this adversary proceeding.

## LEGAL STANDARD

The United States Code provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District Court refers all bankruptcy cases to the Bankruptcy Court. *See* General Order 01-15 (June 29, 2001). However, district courts "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

When determining whether cause to withdraw a reference exists, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d. Cir. 1993)).

Federal bankruptcy statutes classify matters as either "core proceedings," in which the bankruptcy court "may enter appropriate orders and judgments," or "non-core proceedings," which the court may hear, but for which the court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c). The analysis of whether permissive withdrawal is appropriate begins with whether the claims are "core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." See *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). A bankruptcy court can only adjudicate otherwise prohibited non-core matters designated for final rulings in

bankruptcy court with the parties' knowing and voluntary consent. *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

## DISCUSSION

### I.   THE STATE LAW CLAIMS ARE NON-CORE

In determining whether a claim is core or non-core, courts should not give undue weight to the definition of "core" in 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate") and 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate."). *In re Castlerock Properties*, 781 F.2d 159, 161- 62 (9th Cir. 1986). These enumerated "core" proceedings must be narrowly construed because, under a broad interpretation, "virtually any action involving a debtor that would result in recovery for the estate would be a core proceeding." *Gorilla Companies, LLC v. Van Tassel*, 2009 WL 3241759 at *2 (D. Ariz. 2009); see also *Castlerock*, 781 F.2d at 162. (Courts "should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems.").

Proceedings are properly characterized as non-core "if they do not depend on the Bankruptcy Code for their existence and they could proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004) (internal citation omitted). In the Ninth Circuit, an action is non-core when there is "not a cause of action created by title 11 or one that only arises in title 11 cases," even if the non-core claims may have some impact on the administration of the estate. *In re Eastport Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991).

Courts have determined that state law claims for breach of fiduciary duty are "noncore." See *Everett v. Art Brand Studios*, 556 B.R. 437, 444 (N.D. Cal. 2016); *Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 893 (D. Del. 1991). In *Everett*, the Northern

District of California granted a motion to withdraw the reference of a trustee's adversary complaint involving breach of fiduciary duty and usurpation of corporate opportunity claims. 556 B.R. at 447.

The Court explained that the claims were non-core because they could have been brought in state or federal court, the bankruptcy court could not enter final judgment on the claims, and efficiency favored withdrawal, as withdrawal would prevent delay and avoid added costs of the parties. *Everett*, 556 B.R. at 447. Specifically, the Court found that the only connection between the causes of actions sought to be withdrawn and the bankruptcy estate was "that, in the absence of Defendants' alleged misconduct, additional funds may have been available to [the estate's] creditors." *Id*. at 443-44. This, the Court held, was insufficient to make the state law claims "core." *Id*.

Similarly, a Chapter 11 trustee's adversary proceeding to recover damages for breach of fiduciary duty was found to be "non-core" and subject to permissive withdrawal because the proceeding involved state law claims that could have been asserted prior to the bankruptcy filing. *Matter of Delaware & Hudson Ry. Co.*, 122 B.R. at 893. State law claims like breach of fiduciary duty are necessarily non-core proceedings because the claims do not rely on bankruptcy statutes; the claims—at most—merely impact the assets available for distribution. *Security Farms et al. v. Int'l Brotherhood of Teamster, et al.*, 124 F.3d 999, 1008 (9th Cir. 1997); see also *Everett*, 556 B.R. at 443.

Here, unquestionably, the Trustee's State Law Claims do not arise from Title 11. Just as in *Everett*, the only relationship between the State Law Claims and the Bankruptcy Case is that, if successful, any damages awarded for knowing participation in, or aiding and

abetting, a breach of fiduciary duty would increase size of the estate.  Second, the Trustee's State Law Claims could have easily been brought in state court.  In conjunction with the Trustee's filing of the First Complaint, the Trustee even indicated that the nature of the suit was "other actions that would have been brought in state court if unrelated to bankruptcy." [See Docket No. 1].  Thus, the Trustee's State Law Claims are properly considered "non-core."

## II.  ALL RELEVANT FACTORS WEIGH IN FAVOR OF WITHDRAWAL OF THE REFERENCE

Courts grant a motion to withdraw the reference of non-core claims when the factors, on balance, weigh towards adjudication in the district court. *Security Farms*, 124 F.3d at 1008.  The factors the court "should consider [are] the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id*.; see also *Sibarium v. NCNB Texas Nat. Bank*, 107 B.R. 108 (N.D. Tex. 1989) (holding that where non-core issues are presented and where there is a jury demand and no consent for trial by the bankruptcy judge, considerations of judicial economy strongly suggest adequate cause for permissive withdrawal).  Here, each of the relevant factors weigh in favor of adjudication in the District Court.

### A.  *The Non-Core Claims Predominate the Core Claims*

A district court should withdraw the reference when non-core claims "predominate" over core claims. *Security Farms*, 124 F.3d at 1008 ("efficiency was enhanced by withdrawing the reference because non-core issues predominate.").  For example, the *Security Farms* court determined that because the state law claims were in bankruptcy court only because of their potential impact on the debtor's estate, the claims "predominated" and

thus cause existed for the district court to withdraw the reference. *Id.* at 1008-1009.

The Trustee's Fraudulent Transfer Claims may constitute "core" claims under 28 U.S.C. § 157(b)(2)(H).[1] However, although the Fraudulent Transfer Claims are comprised of four separate causes of action, they essentially compress into only two causes of action, as the Trustee is merely seeking avoidance under the "actual" and "constructive" fraudulent transfer provisions of the Bankruptcy Code, and alternatively, under the "actual" and "constructive" fraudulent transfer provisions of Texas' state law fraudulent transfer statutes. Despite this, the Trustee's State Law Claims actually overwhelm the Fraudulent Transfer Claims. Each of the two causes of action for "actual" fraudulent transfers are essentially derivative of the claim for knowing participation in (or aiding and abetting) breach of fiduciary duty in the sense that the adjudicating court must first determine that Defendants' conduct was wrongful (i.e., that there was an actual breach of fiduciary duty by the Debtor) before the transfers can be avoided or recovered pursuant to the Bankruptcy Code. In addition, the relative size of requested damages also shows that the State Law Claims predominate. For example, the Fraudulent Transfer Claims only identify $755,681.01 in transactions. In contrast, the Trustee is seeking alleged damages of $3,053,000 on account of the remaining State Law Claims – over four times the value of all the Fraudulent Transfer Claims combined.

---

[1] Even though § 157(b)(2)(H) expressly classifies actions to "determine, avoid, or recover fraudulent conveyances" as core claims, bankruptcy courts may not render final judgments as to those claims because doing so would violate Article III. *MDIG Creditor Tr. v. Wittenberg*, No. CV-21-01463-PHX-GMS, 3 (D. Ariz. Apr. 14, 2022) (citing *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 562 (9th Cir. 2012), *aff'd sub nom. Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014)).

The litigation and discovery involving the State Law Claims will subsume the other Fraudulent Transfer Claims.  There are many gigabytes in electronic discovery alone, most all of which relates to the fundamental questions of what duties or standards of care were owed by which Defendants, whether the Defendants met those standards of care (if any were even owed), whether the Debtor was in fact perpetrating a Ponzi scheme, when the alleged Ponzi scheme first arose (if it even did), whether the Debtor owed any fiduciary duties to his various partners based on many differing contractual relationships with them, whether the Debtor actually breached any fiduciary duties (if any were owed) and with respect to which particular partners, whether the Defendants (or the Debtor's partners) were actually aware of any Ponzi scheme or breaches of fiduciary duties, and whether the Defendants (or the Debtor's partners) substantially assisted or knowingly participated in any alleged breaches of fiduciary duties or Ponzi scheme.  By contrast, it is not really in dispute that the Debtor repaid certain loans that he had with Valliance, and any additional discovery required regarding the amount of any such transfers will be minimal.  As to the calculation of any transfers sought to be avoided and recovered, and the application of those amounts to the outstanding loan balances with respect to the issue of the Debtor's receipt of reasonably equivalent value, that is simply math.

Consequently, even though the State Law Claims are "non-core," these claims will overwhelm, overshadow, and predominate the other Fraudulent Transfer Claims.  Because the non-core claims vastly overpower the core claims, pre-trial discovery and litigation of this case is best suited in the District Court, rather than the Bankruptcy Court.  This points in favor of the Court withdrawing the reference from the Bankruptcy Court.

### B. *Defendants' Demand for Jury Trial Supports Withdrawing the Reference*

Moreover, bankruptcy courts "cannot conduct jury trials on non-core matters, where the parties have not consented, 'because to do so would create a conflict between the Seventh Amendment and 28 U.S.C. § 157(c)(1).'" *One Longhorn Land I, LP v. Presley*, 529 B.R. 755, 764 (Bk. Ct. C.D. Cal. 2015); see also *In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990). In fact, even some core claims must be submitted to a jury. For example, a trustee's action to recover a fraudulent conveyance or transfer constitutes a private right entitling the defendant to a jury trial, so long as the defendant has not submitted a claim to the bankruptcy estate. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57-59 (1989). Here, none of the Defendants have made claims on the Debtor's estate, and this factor weighs in favor of withdrawing the reference. In fact, judicial economy would be better served by withdrawing the reference so that all claims for which any Defendant is entitled to a jury trial can be finally adjudicated in a single forum.

Defendants have requested a jury trial, they have not consented to a trial by the bankruptcy judge, and they have not consented to the final resolution of non-core matters in Bankruptcy Court. Each of these facts weigh in favor of the District Court withdrawing the reference from Bankruptcy Court.[2]

### C. *Adjudication by the District Court Supports Judicial Economy*

---

[2] However, Defendants are mindful that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007). "Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters," because only "by allowing the bankruptcy court to retain jurisdiction over the action until trial *is actually ready* do we ensure that our bankruptcy system is carried out." *Id.* at 787-88; *see also In re Castlerock Props.*, 781 F.2d 159, 161 (9th Cir. 1986) ("In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master.").

When one or more claims are considered non-core and the bankruptcy court cannot enter final judgment on the claims, efficiency favors withdrawal to the district court, which has the authority to enter final judgment on all claims. See *In re Rosales*, 2013 WL 5962007, at *3 (N.D. Cal. 2013). Judicial economy is further supported by returning the factual disputes to the District Court, where they can be adjudicated uniformly and with finality.

### D. Adjudication by the District Court Does Not Raise Any Concerns Regarding Forum Shopping

A district court should not withdraw the reference when doing so would promote forum shopping. *Everett*, 556 B.R. at 445. In *Everett*, forum shopping was not a concern, as only the district court would have had the power to enter final judgment on the non-core claims anyway. *Id*. Even if the bankruptcy court adjudicated the non-core claims, the district court would still have had to conduct a *de novo* review of the losing party's objections. *Id.*; see also *In re Tamalpais Bancorp*, 451 B.R. 6, 9 (N.D. Cal. 2011). Here, just as in *Everett*, any final judgment on the dominant non-core State Law Claims will need to be reviewed by the District Court. This negates any concerns about forum shopping and weighs in favor of withdrawing the reference.

### E. Withdrawal of the Reference Will Not Result in any Delay and Additional Costs to the Parties

Withdrawal here would prevent delay and added costs of the parties by placing the claims before the District Court, which can render final judgment. Absent a withdrawal of the reference, the Bankruptcy Court will be required to refer any factual findings or conclusions of law to the District Court for *de novo* review, 28 U.S.C. 157(c)(1), which delays a prompt resolution of the primary State Law Claims. Thus "unnecessary costs could be

avoided by a single proceeding in the district court." *Security Farms*, 124 F.3d at 1009. In fact, by withdrawing the reference, not only will the parties avoid additional costs, significant economies could be achieved by adjudicating all claims arising from the same set of relevant facts in the same forum. Certainly, this factor supports withdrawing the reference.

## CONCLUSION

Permissive withdrawal of the reference is warranted and appropriate. The Trustee's Third Complaint raises significant non-core issues that cannot be adjudicated by the Bankruptcy Court. Judicial economy is best served by withdrawing the reference of this adversary proceeding and allowing all the related, non-core claims to be adjudicated in a single forum.

WHEREFORE, Defendants therefore respectfully urge the District Court to grant their Motion, to direct that the Bankruptcy Court transfer all pleadings related to this action to the Clerk of the District Court, and for such other Orders as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 8th day of June, 2023.

        POLSINELLI PC

        By: */s/ Michael Campbell*
            Michael A. Campbell
            Matthew S. Layfield
            Nick A. Griebel

        *Attorneys for Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

I hereby certify that on June 8, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James E. Cross
Cross Law Firm, PLC
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
*Chapter 7 Trustee*

Jeffrey Goulder
Alisa Lacey
Michael Vincent
Clarissa Brady
STINSON LLP
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004
*Counsel for the Trustee*

James Kahn
Krystal Ahart
Bankruptcy Legal Center
Kahn & Ahart, PLLC
301 E. Bethany Home Rd., #C-195
Phoenix, AZ 85012
*Counsel for the Debtor*

Larry L. Watson
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

*/s/ Rebecca O'Brien*